BARBARA ARCHER, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64163, 64165–64168, 64171–64173.

Promulgated February 9, 1938.

*William H. Oppenheimer, Esq.*, and *Robert Leach, Esq.*, for the petitioners.

*Philip M. Clark, Esq.*, and *Stanley B. Pierson*, Esq., for the respondent.

### OPINION.

SMITH: These proceedings, consolidated for hearing, involve income tax deficiencies for 1929 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Barbara Archer | 64163 | $7,634.41 |
| Doris C. Archer | 64165 | 6,594.85 |
| Doris L. Archer | 64166 | 7,634.42 |
| Lou Ella H. Archer (now Mrs. L. A. Elliott) | 64167 | 6,653.80 |
| Shreve M. Archer, Jr | 64168 | 7,634.41 |
| Georgianna Archer | 64171 | 7,634.41 |
| Helen H. Archer | 64172 | 7,634.42 |
| Harriet H. Archer | 64173 | 6,425.52 |

[1] Proceedings of the following petitioners are consolidated herewith: Doris C. Archer; Doris L. Archer; Lou Ella H. Archer (now Mrs. L. A. Elliott); Shreve M. Archer, Jr.; Georgianna Archer; Helen H. Archer; and Harriet H. Archer.

The petitioners, residents of Minneapolis, Minnesota, and vicinity, are beneficiaries of the Archer Trust, which was created in 1919. The income of the trust was distributable annually. The questions in issue relate to the determination of the net income of the Archer Trust for 1929. The petitioners allege as errors in the determination of the net income of the trust the following disallowances by the respondent:

(a) Losses on sale of securities owned by the trust of $294,266.12.

(b) Loss of $33,000 paid by the trust to carry out and make good the act of Shreve M. Archer in endorsing as an agent of the trust and for its accommodation certain paper of Healy-Owen-Hartzel Co., in which company the trust was interested.

(c) Loss of $69,000 on sale of stock owned by the trust in the Capital National Bank of St. Paul.

By an amended answer in the case of each petitioner the respondent alleges that he erred in considering the profit on the sale by the trust of 444.6 shares of Northwest Bancorporation stock taxable under the capital gain provisions of the Revenue Act of 1928, instead of taxing it as ordinary income, and claims an increased deficiency due from each petitioner by reason of such mistake.

The points in issue will be considered in order.

*A.—Loss of $294, 266.12 on Sale of Securities Owned by the Trust.*

*Findings of Fact.*—On January 1, 1919, members of the Archer family created by written instrument a trust, hereinafter designated the Archer Trust, and transferred to it certain property for administration by the trustees under the terms of the trust instrument. In 1929 the Archer Trust sold over $3,000,000 worth of securities, realizing gains upon some sales and losses upon others.

During the latter part of the year 1929 the trust desired to sell additional securities. Prices of securities were greatly depressed. The trust found a purchaser for the securities in the person of Doris C. Archer, one of the beneficiaries.

At the time Doris C. Archer owned securities of a value between $200,000 and $300,000. On December 31, 1928, she had to her credit on the books of the trust an additional amount of $254,557.12. This was her absolute property, which she was entitled to withdraw at any time. During 1929 she had credited to her account an additional sum, as income from the trust, amounting to $77,560.22, making a total credit to her account of $332,117.34. This was her absolute property, which she had the right to withdraw at any time.

In November or December of 1929 the trust sold to Doris C. Archer, at the then market prices, securities for $384,053.50. The trust sustained a loss upon the sale of the securities amounting to $294,266.12.

In its return for 1929 the trust deducted from gross income this loss of $294,266.12, which has been disallowed by the respondent in determining the net income of the trust.

Doris C. Archer paid for the securities in part with the credit standing to her account upon the books of the trust. The balance of the money necessary to pay for the securities purchased from the trust was given to her by her husband, Shreve M. Archer, one of the trustees. Certificates for all of the securities thus purchased by Doris C. Archer were delivered to her in 1929 by the trust and deposited by her in her own safety deposit box. In most instances the securities were transferred into her name upon the books of the corporation which had issued them in 1929. In a few instances, however, the transfer was not made of record on the books of the issuing corporation until after the close of 1929.

There was no agreement or understanding between Doris C. Archer and the trustees, or any other person, that the securities thus purchased by her would ever be reacquired by the trust. It was the intention of the trustees to part with all right, title, and interest in and to the securities sold. The sales were bona fide and the trust sustained a loss upon the sales in the amount of $294,266.12.

*Opinion.*—The reason for the disallowance by the respondent of the claimed loss of $294,266.12 upon the sale of securities to Doris C. Archer is not entirely clear. There is nothing in the record which indicates that the sales were not bona fide.

The mere fact that the purchaser was a beneficiary of the trust selling the securities can not invalidate an otherwise valid sale. There is nothing illegal in a beneficiary purchasing securities from a trust. *Hartford–Connecticut Trust Co.* v. *United States*, 10 Fed. Supp. 179. In that case the District Court said:

The contention of the defendant that the transaction was a sham because the parties to the sale were trustee and life beneficiary of the trust estate, and the subject-matter was an item belonging to the trust corpus, is without merit. For the principles of general jurisprudence and the Revenue Act itself alike treat the trust as a separate entity. * * *

To the same effect see *Terry* v. *United States*, 10 Fed. Supp. 183; *Marston* v. *Commissioner* (C. C. A., 2d Cir.), 75 Fed. (2d) 936; *Edward Mallinckrodt, Jr.*, 14 B. T. A. 194; *Ida C. Calloway et al., Executors*, 18 B. T. A. 1059; *Budd* v. *Commissioner*, 43 Fed. (2d) 509.

We do not think it material that Shreve M. Archer furnished a part of the funds for the purchase of the securities. Upon the authority of the above cited cases sales to the trustee would have had the same validity as sales to a stranger.

In his brief the respondent contends that the petitioners have fallen down upon their proof as to the amount of the claimed losses

in that they have not shown the cost to the trust of the securities sold. The respondent states:

In determining a loss on the sale of securities it is elemental that the cost thereof must be established by competent evidence. Petitioners in their brief make no reference whatever to the details of the acquisition of these stocks nor is any reference made to the costs thereof. Evidently petitioners rest upon the ledger sheets of the Archer Trust as proof of the cost of the stocks here in question. These were introduced by petitioners' witness H. E. Hyre, a public accountant in Minneapolis who first became accountant for the Archer Trust in 1927. Respondent submits that these ledger sheets have no probative value in showing the cost of the several securities here involved. * * *

Neither in the deficiency notice nor at the hearing of these proceedings was any question raised by the respondent as to the correctness of the accounts of the Archer Trust as showing the losses sustained upon the sale of the securities. There is nothing to indicate that the respondent questioned the correctness of the net income of the Archer Trust as shown by its books of account in respect of the sales of nearly three million dollars worth of securities in 1929 sold to others than Doris C. Archer. There is nothing to indicate that the books of account of the Archer Trust did not properly reflect the cost to the trust of all of the securities sold. If the respondent had intended to raise the question of the correctness of the books of the Archer Trust as showing the cost of the securities sold to Doris C. Archer, he should have raised it at the time of the hearing, when the books were introduced.

But we are of the opinion that the evidence of record shows that the books of account of the Archer Trust correctly reflect the costs of securities to it. The public accountant who had kept the books of account of the Archer Trust from 1927 testified in each instance that the books of account correctly reflected purchases and sales of securities. On cross-examination the respondent did not attempt to impugn the witness' testimony. We are therefore of the opinion that the contention of the respondent made in his brief that the petitioners have failed to show the cost to the Archer Trust of the securities sold to Doris C. Archer is without merit.

This issue is decided in favor of the petitioners.

---

*B.—Loss of $33,000 on the Healy-Owen-Hartzel Co. Transaction.*

*Findings of Fact.*—Several years prior to 1929 the Archer Trust purchased a one-fourth interest in a corporation known as the Healy-Owen-Hartzel Co. At the time of the purchase the company had a good record as far as earnings were concerned and, apparently, a good future. The company, however, encountered bad times and their loans

at the bank would have been called without some endorsement or guarantee. The trustees of the Archer Trust discussed the matter and, thinking that there was a good chance of the company pulling out of the hole, had Shreve M. Archer, for the benefit of the Archer Trust, endorse the notes of the Healy-Owen-Hartzel Co. at the bank and their loans from another corporation, hoping that thereby the Healy-Owen-Hartzel Co. would survive and make money. The corporation, however, continued to go down hill and was finally liquidated and the Archer Trust, in addition to losing its stock interest, was called upon to make good to the extent of $33,000, the endorsement and guarantee of Shreve M. Archer. To protect this guarantee the Archer Trust had put up collateral belonging to it.

In 1929 the Archer Trust paid under such endorsement and guarantee, and to protect its collateral, $33,000. The deduction of this amount upon the return of the Archer Trust was disallowed by the respondent.

*Opinion.*—The contention of the respondent upon this point is that Shreve M. Archer acted for himself in endorsing the notes of the Healy-Owen-Hartzel Co. and that he alone was liable upon his endorsement; that Shreve M. Archer did not act for the Archer Trust in making the endorsement and, hence, that the Archer Trust sustained no deductible loss upon the payment of the $33,000. The evidence upon this point shows conclusively that Shreve M. Archer acted for the Archer Trust in making the endorsement of the notes. He made the endorsement merely as agent of the Archer Trust. It was the Archer Trust, and not Shreve M. Archer, who had a large amount at stake in the success or failure of the Healy-Owen-Hartzel Co. and it was the trust's property which was placed with the bank as collateral on the note. The respondent was in error in disallowing the deduction of the loss.

*C.—Loss of $69,000 on Sale of Stock Owned by the Archer Trust In Capital National Bank of St. Paul.*

*Findings of Fact.*—In 1919 the Archer Trust acquired 600 shares of the capital stock of the Capital National Bank of St. Paul at a cost of $90,000. In 1924 it paid an assessment upon these shares of $6,000. Its total investment in the stock was, therefore, $96,000. On May 4, 1924, the Capital National Bank of St. Paul appointed a voluntary liquidating agent. This agent paid a liquidating dividend of $20 per share during the month of April 1927. Some of the stockholders of the Capital National Bank of St. Paul caused to be organized a corporation under the laws of the State of Delaware, known as the Northwest Properties Corporation, which had a capital stock of 10,000

shares of no par value. Pursuant to a plan of reorganization, on April 11, 1927, the Northwest Properties Corporation acquired all of the assets of the Capital National Bank of St. Paul in exchange for its stock, and $250,000 in cash.

It was provided in the plan of reorganization that each stockholder of the bank would receive one share of stock in the new corporation plus $25 per share as a liquidating dividend for each share of stock held in the bank. Under the plan of reorganization each stockholder had the right to receive from the Capital National Bank of St. Paul a check for $25 plus one share of stock of Northwest Properties Corporation, or a check for $45 plus a right to subscribe for one share of Northwest Properties Corporation at $20 per share, which right of subscription might be waived. If a stockholder did not exercise his right to subscribe for a share of stock in the new corporation he executed a waiver and his stock was disposed of by the bank to some other stockholder at $20 per share. All of the stockholders of the bank, including the Archer Trust, took stock in the Northwest Properties Corporation under the plan, except certain stockholders owning 352⅔ shares. These 352⅔ shares were sold by the bank to other stockholders.

In 1927 the Commissioner was requested to rule upon the question as to whether the Capital National Bank of St. Paul and its stockholders realized gains or sustained losses where, as in the case of the Archer Trust, they had received, for each share held, $45 in cash and subscribed for a share of stock of the Northwest Properties Corporation at $20. Under date of December 7, 1927, the Commissioner, over the signature of the Deputy Commissioner, advised as follows:

You inquire:

1. Is the National Bank entitled to claim a loss for Income Tax purposes in 1927 on the above transaction?

2. Are the stockholders entitled to claim a loss for Income Tax purposes in 1927?

3. What is the basis to be used by the Northwest Properties Corporation to compute its gain or loss upon the future disposition of the assets acquired from the bank?

You are advised in reply:

1. The transfer of the bank assets to the Properties Corporation for cash and stock, the distribution of such stock and such cash (or of cash received from such of the bank stockholders as exercised their right to acquire the Properties Corporation stock), constitute reorganization transactions such as are contemplated within the meaning of Section 203 (d) of the Revenue Act of 1926 as affected by Section 203 (e) (1) of the act and hence no gain or loss to the bank is recognized for income tax purposes.

2. The receipt of those stockholders of the bank who exercised their right to acquire the Properties Corporation stock, of cash, and of stock of the Properties Corporation in exchange for their bank stock and the payment by them of additional cash, is such a transaction with respect to such stockholders as is contemplated in Sec. 203 (f) of the Revenue Act of 1926 in which no loss is

recognized. If the market value of the stock received in the transaction, however, plus the cash received is in excess of the sum of the basis at which the stockholder held his stock and the cash paid by him to the bank in the transaction, such excess is taxable gain to the stockholder.

Those stockholders who received only a liquidating dividend in cash on the surrender of their stock, realized a profit subject to normal tax and surtax or sustained a loss, respectively, to the extent that the amount of the liquidating dividend received was greater or was less than the basis at which they held their stock. This is based on the assumption that the bank stockholders involved surrendered their bank stock.

3. The basis of the assets of the bank in the hands of the Properties Corporation is the same as the basis of such assets in the hands of the transfer bank.

The Archer Trust accepted as correct the ruling made by the respondent and the petitioners failed to claim in their income tax returns for 1927 any loss upon the transaction. The $27,000 cash received as liquidating dividends by the Archer Trust in 1924 and 1927 was treated as returns of capital reducing the base of the trust's investment in the stock of the bank.

In 1927, 1928, and 1929 the Archer Trust received liquidating dividends from the Northwest Properties Corporation amounting to $9,258. On November 26, 1929, it sold its 600 shares of Northwest Properties Corporation at the then market price for $4,800. In its tax return for 1929 the trust treated $2,058 as gain upon the sale of these shares but claimed as a loss in respect of the sale in 1929 the amount of $69,000, which the trust would have claimed as a loss in 1927 had the respondent ruled that it was a closed transaction in that year. The real claim of the petitioner for 1929 is that it sustained a loss of $66,942 upon the sale of the 600 shares of Northwest Properties Corporation in 1929. As above indicated, the respondent has disallowed the claimed deduction of $69,000, or any part thereof.

*Opinion.*—The contention of the respondent upon this point is that the Commissioner in 1927 made an error in his ruling with respect to the transaction in question; that in truth and in fact a loss was sustained in 1927 and not in 1929; and that the erroneous interpretation of the law by the Commissioner in 1927 is no bar to the disallowance of the claimed deduction in 1929.

The respondent based his ruling in 1927 upon the provisions of section 203 (d), 203 (e) (1), and section 203 (f) of the Revenue Act of 1926. Those provisions read in material part as follows:

(d) (1) If an exchange would be within the provisions of paragraph (1), (2), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the *gain*, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

\* \* \* \* \* \* \*

(e) If an exchange would be within the provisions of paragraph (3) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of stock or securities permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then—

(1) If the corporation receiving such other property or money distributes it in pursuance of the plan of reorganization, no *gain* to the corporation shall be recognized from the exchange, * * *

* * * * * * *

(f) If an exchange would be within the provisions of paragraph (1), (2), (3), or (4) of subdivision (b) if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain or loss, but also of other property or money, then no loss from the exchange shall be recognized. [*Italics supplied.*]

It will be noted from the above that subdivision (d) and subdivision (e) are concerned only with cases where there is a gain to the taxpayer. Subdivision (f) refers to the provisions of paragraph (1), (2), (3), or (4) of subdivision (b). None of those provisions have application to the facts which obtain in this case.

The material fact is that the Capital National Bank of St. Paul was liquidated in 1927. Upon the liquidation the Archer Trust received for each share of bank stock a check for $45 as a liquidating dividend with the right to apply $20 thereof to the purchase of one share of Northwest Properties Corporation. If it had waived its right to subscribe for shares of stock of the Northwest Properties Corporation there could be no question but that the loss was sustained in 1927. But whether the right was exercised or not, the result must be the same. The Archer Trust sustained a loss in 1927 of $69,000 upon the liquidation of the National Capital Bank of St. Paul. The respondent was clearly in error in advising the Archer Trust that the loss was not deductible from the gross income of 1927. The petitioners do not argue otherwise. On brief the petitioners state:

The first question to be raised is the legal and moral right of the Commissioner of Internal Revenue after a matter has been finally and definitely submitted to him by a taxpayer and he has made a ruling thereon to reverse and change that ruling at a time when the statute of limitations has run and thereby deny the taxpayer because of the Commissioner's own act relief which he is entitled to under the law. While perhaps technically such action can be justified as a legal matter it shocks the conscience and is the type of executive action which should be condemned by the Courts and which if persisted in destroys the confidence that is so essential if Government is to exist.

The real question in issue here is whether there is any authority under the law to allow the deduction of a loss in 1929 which was clearly sustained in 1927. We are of the opinion that neither the Board nor the courts have such authority. The erroneous ruling by the Commissioner in 1927 does not serve to permit the deduction of the loss in 1929. In *Basil Robillard, Executor*, 20 B. T. A. 685; affd.,

per curiam, *Robillard* v. *Burnet*, 50 Fed. (2d) 1083; certiorari denied, 284 U. S. 650, the Board said:

* * * An erroneous interpretation of the statute by the Commissioner does not conclude the United States on a subsequent modification of the ruling or create equities in favor of the petitioner requiring the judicial adoption of the first interpretation. *American La France Fire Engine Co.* v. *Riordan*, 294 Fed. 567; *Langstaff* v. *Lucas*, 9 Fed. (2d) 691; certiorari denied, 273 U. S. 721.

In *Eichelberger & Co.* v. *Commissioner* (C. C. A., 5th Cir.), 88 Fed. (2d) 874, the facts were that the taxpayer in 1930 sold land to another corporation owned by the same persons as those owning its stock. The loss was disallowed for 1930 because of this identity of stockholders. The purchaser never made any payment and it was agreed that the sale be canceled, but no reconveyance was made to the taxpayer. In 1932 the purchaser conveyed the land to a stranger, receiving stock which was turned over to the taxpayer and sold by it in 1932. The court held that the loss was properly deductible in 1932. In the course of its opinion the court stated:

* * * He [the Commissioner] cannot justly decide in 1930 that the sale did not realize the loss and thereby collect increased taxes, and in 1932 decide that it did realize the loss and collect taxes accordingly again. We said in *Perkins, et al.* v. *Thomas, Collector*, — Fed. (2d) — * * *: "It is manifestly unjust to allow the Government, having thus informed the taxpayer he could not have the deduction for his invested capital in 1928, now to say he could have it only then." This is not a case of a taxpayer who neglected to assert his rights and so lost them by limitation. It is not a case of taking bad advice given by a mere revenue agent as in *Darling* v. *Commissioner*, 49 Fed. (2d) 1114. The right was claimed in the 1930 return and disallowed by the Commissioner. The United States got the benefit of his decision then and ought to abide by it now. The judgment is reversed with direction to correct the tax by allowing the deduction in contention.

With all due respect for the ruling made in the *Eichelberger* case, we are of the opinion that the language cited does not correctly state the law as it applies to the case at bar. We are of the opinion that the respondent correctly disallowed the deduction of the claimed loss of $69,000 in the determination of the deficiency for 1929.

---

*D.—Claim of Respondent to an Increased Deficiency.*

*Opinion.*—By amended answers the respondent claims an increase in deficiencies by reason of the fact that in the computation of the deficiencies of the Archer Trust for 1929 he treated as capital gain a profit realized upon the sale of 444.6 shares of Northwest Bancorporation stock. In his amended answers the respondent:

Alleges that during the taxable year 1929 the Archer trust sold 444.6 shares of Northwest Bancorporation stock acquired by the said trust under rights issued

on August 15, 1929, on shares of stock held more than two years, at a profit of $12,695.20. * * * In the final determination the Commissioner computed the tax on this profit in accordance with the capital gain provisions of the Revenue Act of 1928.

The petitioners filed no replies to the amended answers. At the hearing of these proceedings counsel for the petitioners stated that the respondent might be right upon the point in issue and would not contest it.

The correct rule to be applied in this situation has been laid down by the United States Circuit Court of Appeals for the Seventh Circuit in *Insull* v. *Commissioner*, 87 Fed. (2d) 648. See also *Macy* v. *Helvering* (C. C. A., 2d Cir.), 82 Fed. (2d) 183. The computation of the gain should be in accordance with the principles laid down by the courts in the above-cited cases.

*Judgment will be entered under Rule 50.*